Good morning. May it please the court, my name is Guarino Chento. I represent the appellate Mary Reyes. Before I get started on the argument, I wanted to just say I've been practicing court reporting law for 25 years, but I'm newly admitted to this court. This is my first appearance here. I just wanted to thank you for giving me the opportunity, for granting me my admission, and for allowing me to represent Ms. Reyes. Well, Mr. Chento, welcome. Thank you. Let's hear your argument. All right, Your Honor. I'm obviously going to talk about the collateral attack defense, but I want to start with accuracy. As I read the, as I reread the briefs, as I reread the court's rulings, I realized there's a very, there's one thing that's very confused, and that is, what are we measuring the accuracy of? Now, the district court's reading of the case is that we were measuring the accuracy of the balance itself on this Citibank account. That's not exactly what we're doing. The accuracy issue is the liability for that balance. These are two different things. Say, for example, I can put a finer point on it this way. Let's say that the fraudulent charges, so in this case, the fraudulent charges were approximately $2,500, but let's say that they were reported as $5,000. In that case, there would be two inaccuracies. The balance would not accurately reflect the amount of the fraudulent charges, and it would not accurately reflect whether she was liable for those charges. Ms. Reyes's Did she ever contact, like when you have charges on your credit card, it shows who the company was that you bought things from, or whatever. Did she ever try to contact those people and say, I didn't buy this dress, or I didn't buy this dog, whatever. Yes, Your Honor. And what was that evidence? So what she did, what happened is that early one morning, they received alerts from Citibank, fraud alerts, letting them know that there were charges that Citibank suspected were fraudulent. And so when they woke up in the morning, they checked their accounts and they realized that there were lots of charges, like gas stations, restaurants, bars. The charge, in fact, that caused this was a charge at some bar that they'd never been to. And so they immediately called Citibank, disputed the charges, made a complete list of the charges, called the various police departments in the counties where the charges were made, and filed police reports to those counties, figured out how to make disputes of this information with TransUnion, Equifax, and Experian, and submitted identity theft affidavits. They did everything they could. The Reyes's are actually accountants, so one of the things they were able to do is they put together a spreadsheet that went along with their disputes to Equifax. In the spreadsheet, she not only identified all the fraudulent charges, she identified where each charge was made, the address where it was made, and where she was at the time that the charges were made. I mean, she really did go above and beyond in terms of trying to prove that she did not make these charges. Right. Well, and that may be, and that she may have done everything she possibly could to do, to do the police reports, and to send the letter, and to make a spreadsheet, but at the end of the day, Citibank held fast and said, no, it's got an embedded chip, didn't they? And we think you made these charges because it couldn't have been done any other way. That was their position, wasn't it? Well, it was their position, Your Honor, in a letter that they wrote to them. Now, that is the only piece of evidence that was submitted in the case on either of those two facts. Those two facts being that the charges were made with a chip, and that the charges could only have been made, and that a chip could not have been duplicated. And what's the evidence on that? A letter, a letter that we consider hearsay, because it was offered to prove both of those facts, and the court relied on that letter. But if you charge something, if you call up a merchant and you charge on your credit card, they don't see the chip. All they want is those little numbers on the back. So what's this position? Why is it so strongly respected that it had to be made with the chip? Well, we don't know, Your Honor, because Citibank didn't testify in our case. The only, again, the only evidence of these two alleged facts is this hearsay letter from Citibank, which we think the court erred in considering at all. We don't think they should have considered the letter at all. But in any event, the letter, at best, creates a question of fact. Mary Reyes testified. She had her husband corroborate that they did not make those charges. She presented police reports, affidavits, records of where she was when the charges were made. They were made on the other side of, I don't know, Dallas, but there's apparently, it's apparently pretty big. They were made on the other side of Dallas. Anyway, so we believe there's a, that the court should have found and erred in not finding that there was a question of fact that should have gone to the jury as to whether or not she made those charges. It certainly was not proven by that letter that she actually made them. But is that the test? Is that the question, whether or not she, in fact, made the charges, or is the question, which is kind of related to your initial comments that you made, or is the question whether Citibank considered her to have made the charges? Therefore, for the credit reporting agency, they're not incorrect to report that information because they're receiving the information, and they did ask for there to be a little notice put on that she disputes it. That's a true statement of what the situation is. Citibank considers her to owe them money, and she disputes it, but it's still there on the report because Citibank considers her to owe. So they don't have to go to the underlying thing to say, was it a true debt, or whether, you know, did you actually shop at that store, and did you return the item, and did all of the things, that's not the credit reporting agency's role in this whole situation. Your Honor, I respectfully disagree. I think it is exactly . . . What case says it is? I think it is exactly their role, and this case is perfectly analogous to Stevenson, and I think Stevenson controls here. Stevenson, just like this case, is a fraud case. So in Stevenson, originally when the complaint was filed, the consumer believed incorrectly, it turns out, that the items of information that were on his report that he was disputing belonged to another consumer. He thought it was a mixed file. It turned out, as discovery went on in that case, that it was revealed the accounts were actually owned by his son, so they were fraud accounts. And so just like this case, Stevenson is a fraud case. In fact, DeAndre is a fraud case. Many of the so-called collateral attack cases are fraud cases. So it is actually in Stevenson, very clearly, that this Court rejected exactly that proposition you just explained, Your Honor. This Court plainly said that the burden of the investigation falls squarely on the consumer reporting agency. They cannot just pawn it off on the furniture. Mr. Cento, did your client ever sue Citibank? Yes. Did your client obtain a court judgment in her favor? No, but it was settled. It was a settlement? Yes. All right. As part of that settlement, if you can tell me, was there any agreement between your client and Citibank as to what information it would report to the credit reporting agency? That agreement is confidential. All right. Let me ask it this way. Could that theoretically have been a condition of a  It could have, Your Honor, but again, I think, and this is why I wanted to start with this point, because the confusion, I think, still persists. Well, here's my point. Sure. How is it inaccurate for the credit reporting agency to report the only information it obtained from Citibank and your client? Aren't you essentially asking the consumer reporting agency to make a determination that Citibank never made? Yes, Your Honor. I'm asking, that is exactly what the FCRA requires. The FCRA requires the consumer reporting agency to investigate the actual truth of their reporting, not just what the furnisher told them. That has been true in every district court across the country for decades. They cannot simply parrot what the furnisher said. When a consumer disputes something, they must do an investigation, and there are three possible outcomes of that investigation. The first possible outcome is that the information that the furnisher is reporting is correct. That's accuracy. The second possible outcome is that the information they're reporting is not correct, not accurate. But the third possible outcome, and the outcome that happened here, according to Equifax's own admissions, according to the court's findings, is that they could not determine it either way, that it could not be verified. If the settlement was confidential, what facts were there for the consumer agency to discover, to determine that what was reported was inaccurate? I agree that it could not be verified. We agree. It could not be verified. That is exactly what they admitted. That is what they concluded. That is what the court concluded. But the problem with the court's opinion, and this is the biggest error that it made, the district court, is that it took that condition, cannot verify, and it applied the collateral attack defense, which comes to the wrong conclusion. The collateral attack defense says, if something cannot be verified, then you can leave it on the report. But the Fair Credit Reporting Act plainly states in Section 1681I and with respect to furnishers, the merit provision in 1681S2B, that if information cannot be verified, it must be deleted. It cannot remain. And that is exactly what Stevenson found well before the, and this court found, well before the collateral attack defense was ever invented. Stevenson found that. Penner found that. This court has correctly applied the FCRA's standard on unverifiable information before the collateral attack defense ever existed. Have we ever applied that in a case where someone used the collateral attack defense? Where someone actually used the defense? You said before there ever was the collateral attack defense, our court was early in deciding this. But once there is now the collateral attack defense, have we revisited this ever? Is it the answer no? No, Your Honor, because even in that case in Stevenson, that's exactly what the Consumer Reporting Agency argued. They argued that it could not be verified. So they were arguing the collateral attack defense in that case, in the Stevenson case? They were. They were calling it that, Your Honor, because it didn't have that terminology. But it is exactly what they did argue. They argued, this is in Stevenson, in its defense that the reinvestigation was complicated by the accounts fraudulently obtained in Stevenson's name and argued at trial where fraud has occurred, the consumer must resolve the problem with the creditor. And this court on that point said the statute places the burden of investigation squarely on TRW, on the Consumer Reporting Agency. We conclude there was no clear error in the district court's finding of negligence, etc. So they upheld that decision. So it wasn't called the collateral attack defense, but that was the condition in that case, just like it is the condition in this case. Information that cannot be verified under the FCRA must be deleted. It cannot remain. What do you say to someone who would say that if we were to rule for you, we would be creating a circuit split with the first and the fourth and the ninth and probably some other circuit that I'm not thinking of right now? You should. I hope you do. Do you agree that we would be creating a circuit split if we were to . . . Is there any case from any other circuit who's ever held in a collateral attack defense case, it's not a defense? Is there any circuit in the whole country that's ever held that? No, Your Honor, in every one of those circuit decisions is wrong, every single one of them. They have ignored Section 1681I's requirement that unverifiable information must be deleted. Their conclusion is that unverifiable information can remain. Every one of those opinions contradicts the statute itself. You should split the circuits. But your position is we already were early, so we wouldn't create a circuit split. Is that your position or are we creating a split? Well, you can clarify now under the terminology collateral attack. But again, that condition has been argued in other cases. It was argued in Stevenson. It was argued in Penner. It's the same condition here. It's the same condition that exists in every one of those cases. Unverifiable information, what do you do with it? I have one quick question. You said that this evidence is hearsay. It doesn't have to be summary judgment evidence or evidence like that doesn't have to be in admissible form under the rules that were amended in maybe, I don't know, 10 years, some length of time ago, as long as it could be admissible. Are you saying this couldn't be in a business record affidavit, this letter? It couldn't be put into admissible form? I see my time has expired, but if you'll allow me, I'll answer your question. It could be. It wasn't. There was no affidavit. There was no testimony from Citibank. It was hearsay. But even if it wasn't, all it did was create a question of fact. That's it. And the court ignored that question of fact. Thank you. You've saved time for rebuttal. Mr. Barton. May it please the court. Opposing counsel indicated at the outset, I believe, of his presentation that the question before the court is, I wrote it down, what are we measuring the accuracy of? And what I would say in response to that is that's the wrong question. The question that's before this court is, what gives rise to a cognizable accuracy claim under the FCRA? There's a lot of discussion of accuracy. The question is, this is an accuracy claim under the FCRA. Not just what does Webster's define accuracy as, but what does the FCRA say, this is the type of accuracy claim that gives rise to a cognizable claim. And in this case, we don't have an accuracy, a cognizable accuracy claim, because what we have is a legal question. We have the well-established collateral attack defense, which has been recognized, although the terminology slightly varies, in both the First Circuit, the Second Circuit, the Fourth Circuit, the Seventh Circuit, the Ninth Circuit, the Tenth Circuit, the Eleventh Circuit. To answer your question, no circuit that I'm aware of has ever been presented with the collateral attack defense and has rejected it, saying it is contrary to the Fair Credit Reporting Act. What do you say to the fact that he says we had already done it before everybody else? Sure. And I'm familiar with the Stevenson case. Which is not in your brief. It's not. It's a main case in his brief and you don't discuss it. Yeah, should have been discussed. A reading when I read that case, that involved a situation where a furnisher was sent an ACDV. That's the process in which a credit reporting agency contacts the furnisher to reinvestigate a dispute. It was sent an ACDV and did not even respond to it. Gave no response back. In another instance, it instructed the CRA to actually delete the trade line at issue. And another instance, the trade lines were then reinserted after the credit reporting agency was told to delete it. None of those facts are in this case. That is absolutely a situation in which the court correctly held that under those set of circumstances and those set of facts, that the information in question was arguably unverified and should have been deleted. It did not involve the type of dispute we have here. And a set of is the reporting accurate? Yes or no? I mean, is a trade line on a credit report accurate? If it's accurate, full stop. Go no further. Don't go to step two. It's accurate. Whether you get lucky and it's accurate, whatever the case may be. If it's accurate, it's accurate. The Fifth Circuit has held in the Sepulveda case that under the FCRA, it's either inaccurate if one, it's, quote, unquote, patently incorrect, so the information is just flat out wrong under any way you look at it as wrong, or, quote, misleading in such a way and in such an extent that it can be expected to adversely affect credit decisions. So it's either patently wrong, or some courts will say it's latently wrong, right? It might technically be right, but there's something misleading about it. If it's neither of those things, if it's not patently wrong or latently wrong, again, it's considered accurate under the Fair Credit Reporting Act. And a district court correctly held here that under the facts that were presented to it, Equifax was reporting a trade line on a credit card that plaintiff admitted she had. There were charges that were made with that credit card that she admits were made. There were balance. A balance was incurred that she admits she did not pay, and that appeared on her credit report. The court said correctly that that is accurate reporting. Now, at best, what Ms. Reyes was contending was, well, it's latently wrong because I'm not legally responsible for the balance that's being showed on my credit report. So that's why it's wrong, because I'm not legally responsible. And the charges were fraudulent. She would say the charges were fraudulent, notwithstanding that she provided a letter. It's part of her dispute. There was a letter from Citibank saying, well, look, this was made with a chip, and you admit you had the card. You don't admit someone. You don't contend someone stole your card. I mean, everything Equifax gets is hearsay. They get a dispute. I mean, they get a written dispute. And they just take that on faith that you have to use the chip or that the chip was used. Well, they didn't take that on faith. Because the issue is, really the threshold issue is, did, under these circumstances, is Equifax required to conduct a reasonable investigation? And what the collateral attack defense says, you don't go to that because there's no investigation which you could do, essentially. But the reason it exists is because they recognize the credit reporting agency is sitting in a unique position. There's a lot of cases that differentiate a furnisher's responsibility, the type of investigation they can do. But the credit reporting agency cannot reasonably determine who is right or wrong legally. They're not required to go check surveillance cameras and see who's running charges or legally analyze contracts to determine if a charge is made, but you didn't make it. I mean, they're not required to do it. And that's what... Did they put the statement that she contested it, like the Citibank letter said that they would add? Or did they fail to do that? I'm sure opposing counsel will correct me if I'm wrong. I believe they added the statement that was requested by the consumer. You know where it says, because you disagree with the resolution of her claims, we've previously requested the reporting agencies add a note to your credit profile stating that the information is disputed by the consumer. So that was present. So you understand that if they had failed to do something that they said, or that if they had, Citibank requested it and Equifax didn't, I mean, it's not, yeah, it is Equifax, didn't do it, then that might be a problem for Equifax. Yes, I agree. And again, I'm sure opposing counsel will correct me here, but that I've understood. There are two causes of action in this case, 1681I and 1681EB. The failure to add a consumer statement, I believe, is a separate cause of action under the Fair Credit Reporting Act, which is not an issue in this case. So we either didn't do it, we either did do it, or if we didn't do it, it's— There's no claim made for that. There's no claim made for that. And what I will also add, which I think is relevant to, so consumer submits dispute, acknowledges that the credit report is technically accurate, but believes they're not legally responsible. We point to the collateral defense doctrine, which was adopted by the district court correctly. So let's say, hypothetically, the plaintiff is correct and that was wrong, and the standard was simply that a credit reporting agency has liability if they are unable to verify a debt. That would mean, hyperbole aside, that let's say an individual sends in a letter to Equifax and says, I'm not responsible for this $500 charge on my Amex. We contact Amex. Amex says—that's all they said. That's all they said. They said, we're just not responsible for this charge. Amex says, we've checked, they are liable for that. Well— You couldn't have it there, if that was the rule. Because then—but we didn't—did we verify it? We didn't. But we're—but that's—because it's a twisting of—if that—that is—I'm not aware of any—there's a reason no case has ever gone—has ever taken this approach, because it would mean every single time anyone submitted any dispute, it's beyond a slippery slope. I mean, I don't know how—what a credit reporting agency—what a credit reporting agency could do. Now, but—I would say this—but a consumer is not out of luck, because I believe the Fair Credit Reporting Act has addressed this. So in situations such as fraud, if a person believes there's a fraudulent charge on my credit report, and then that puts them in a tight spot, right, because I suppose the furnisher could say, well, it's—is your fault, and what are the—you know, then it's on their credit report, and what are they—what are they to do? Well, 1681c2, specific—it's called Block of Information Resulting from Identity Theft, and it provides a framework upon if certain information is provided to Equifax, a credit reporting agency, if you provide—it breaks it out. You've got to identify the account. You've got to provide a certain information. If you do all those things, check the boxes set forth in the statute, and Equifax, a credit reporting agency, has to—has to—there is no reinvestigation. Block it. Block the reporting, because that— Well, these are conscientious people. What? Were they made known—made aware of this possible avenue? Does the record reflect anything? Well, every—there were, I believe—Equifax received three or four written disputes, each of which were on lawyers' letterhead. I mean, she was represented by counsel. There is no 1681c2 claim in this case. So that's what you should do, is you should, let's say, block it because this is fraud. You block it, and we don't—again, we don't have that claim here, so there's—presumably it's because they—I assume it's because they recognized they didn't meet the—I mean, there are specific things you have to do to do that, but my point is it's why the—it's why a consumer—I'm not suggesting that a consumer just has no avenue or no recourse, but when you don't do that and you're just challenging the legal validity of whether you owe a debt or not—I mean, make no mistake, as you pointed out, Your Honor, I mean, they had to go—they had to go file—I think it was an arbitration proceeding—they had to go to court over this issue about whether they owed the money or not, and there are other cases—there are other cases—one thing that was brought up, didn't come up in the arguments, but was, well, if we go down this road, it's going to lead to—it's sort of amorphous and we don't know what's going to happen. All the circuits that have addressed this doctrine, I can point to examples where they don't always fall—they don't always fall on the side of it's a legal dispute, therefore you're stuck. For instance, there are situations in where someone does get a judgment, and as part of their dispute, they submit a dispute to a consumer reporting agency and it says, hey, look, Amex is saying I owe this money, but here's a letter from Amex saying I don't, or here's a judgment I got saying I don't owe the money, and courts have said in those situations, you don't get to—CRAs, you don't get to hide behind the fact that it's a legal defense. They've provided sufficient information for you to do so. We don't have that here. What we had was actually part of the package, the dispute packages, was a letter from Citibank explaining why they were sticking by their reporting. So there was nothing that took it out of the legal versus factual analysis here. The question that I have is your friend on the other side says that regardless of whether every circuit has gone the other way on this, that the plain text of the statute obligates the approach he's stating, and you know that our circuit is not shy to follow the plain text of the statute even in the face of many obstacles. Can you please help us to know whether the plain text requires the approach he suggests? Yes, and that's my, I'd say my last main point. So he is pointing to language that is found at 1681A5A, okay? And when you pull up 1681, there's obviously an A1, A1, 2, 3, 4, things before you says, the plain language of 1681A5A refers to is, it's conditioned upon if after, my emphasis, after any reinvestigation under paragraph one, meaning it's conditioned on there has to be an obligation to do a reinvestigation before you trigger subpart five. If you don't have an obligation to reinvestigate, if there is no after any reinvestigation under paragraph one, you don't get 2, 3, 4, you don't get, you don't get to this language that we're pointing to. We're sort of, we're jumping, we're, was my point before, you start with is it inaccurate or not, you start with whether or not a reinvestigation is required, and the collateral attack defense doctrine says, acknowledges you are not required to do a reinvestigation when that is the type of reinvestigation that's at issue. So you end your analysis there. You don't then jump to subpart five and say, you know, after any reinvestigation, if it can't be verified, and that to come full circle judge is, is Stevenson, because they, there was a furnisher and the furnisher is telling them delete it or is not responding and other things, and they're not doing it. And so it's, Stevenson is not, it's, it's not on all fours with what we have here. Does that, hopefully that answers your question about how I, how I interpret subpart five. And with that, unless there's any further questions, I'll yield the remainder of my time. Thank you. Thank you. Your honors, there's, well, he's much taller than me. There's no other way to say this. I, I, I believe every single one of them is wrong. They violate the statute. They apply a standard to a condition, which exists in this case and existed in every single one of those cases. The condition, the information that's being disputed cannot be verified. They apply a standard that contradicts the statute itself. And this argument about after an investigation, this is new. I've never heard this argument before. They have never made this argument before, but it doesn't make a shred of sense. And there was an investigation in this case. Of the four disputes, one of them was investigated. Their position is, and the court found in agreement with them, that the information that Mary Reyes was disputing could not be verified. They could not do it. Section 1681I and the corresponding obligation on the furnisher and S2B mandates, it's not optional, that the information that cannot be verified has to be deleted. It can't, it cannot remain. This is there for the protection of the consumer. If you think about it, it makes perfect sense. A consumer disputes information. Their obligation is to find out if that information is true or not true. And sometimes they can't. And it doesn't create the slippery slope that he's talking about, the liability for not verifying. There's no liability for not verifying. There's liability when you decide you can't verify and you leave it. That's where the liability is. Information that is uncertain, not known to be correct, must be deleted. It's the only thing that makes sense. It's the express language of the statute. And when they decided, even if there's just one dispute that you want to apply this to, they decided to leave it there, knowing that they couldn't verify it. They violated S2, Section 1681I, just like every other one of these collateral attack cases. In all of these collateral attack cases, you can read every single one of them, and I have, none of them grappled with this. The only one that did, the only one that did, was Wright, where the dissenting opinion realized exactly what I'm saying. In Wright, the justice explained everything I just told you, that that opinion was wrong because they are ignoring IA5A and the express requirement that unverifiable information must be deleted. They're not liable if they can't verify. They're liable if they can't verify and they don't delete it. And it makes perfect sense. We're talking about credit reporting. If they don't know that it's correct, why would they be allowed to leave it? Council also mentioned, I got to go back to this balance thing too, just one more time. The issue is not how much in fraudulent charges there were. The reporting was not, there is this much in fraudulent charges. The reporting was, and the reporting that Mary Reyes was disputing was, you're liable for those charges. That's what their report says. It doesn't say there's potentially $2,500 of fraudulent charges. It says there's a balance on this account of $2,500 and you are liable for it. That is our dispute. That is what she disputed. She said, I am not liable for those charges. That is a question of fact. She testified, she presented all kinds of evidence that a reasonable jury could look at to see and conclude that she did not make those charges. The court cannot just, the parodying is what this ends up coming down to. The parodying of offense is decades old. The consumer reporting agencies tried to make this defense a long time ago. Namely, we can report whatever is reported to us. Every district in this country, every circuit has rejected that defense and you should too. You should follow Stevenson and reject, finally, the collateral attack defense. Thank you. Thank you. We have your argument. We appreciate the arguments of both sides and this case is submitted.